**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| MOHINDER GUPTA, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | Civil Action No. 09-1055 |
| v. | ) | Electronically Filed |
| | ) | |
| MICHAEL J. ASTRUE, | ) | Judge Arthur J. Schwab |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant | ) | |

**MEMORANDUM OPINION**

## I.     INTRODUCTION

Mohinder Gupta ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g), seeking review of the final determination of the Commissioner of Social Security ("Defendant" or "Commissioner") denying his application for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-433 ("Act"). This matter comes before the Court on cross-motions for summary judgment filed by the parties pursuant to Rule 56 of the Federal Rules of Civil Procedure and this Court's customary practice. (Doc. Nos.14, 18). The record has been developed at the administrative level. (Doc. Nos. 11 - 11-9). For the following reasons and after careful consideration of the ALJ's decision, the memoranda of the parties, and the entire evidentiary record, Defendant's Motion for Summary Judgment will be granted, Plaintiff's Motion for Summary Judgment will be denied, and the decision of the Administrative Law Judge, Alma S. Deleon ("ALJ"), will be affirmed.

## II.     PROCEDURAL HISTORY

Plaintiff filed for DIB with the Social Security Administration ("SSA") June 1, 2006, claiming an inability to work due to disability as of June 29, 2003. (R. at 104).[1] Plaintiff was initially denied DIB by the SSA on November 11, 2006. (R. at 74). Plaintiff filed a request for a hearing by an administrative law judge on December 20, 2006. (R. at 9). A hearing was scheduled for June 12, 2008, and Plaintiff appeared before the ALJ represented by counsel. (R. at 40). A vocational expert, Charles M. Cohen, Ph.D., also testified. (R. at 40). The ALJ issued her decision denying DIB to Plaintiff on July 25, 2008. (R. at 23). Plaintiff filed a request for review of the ALJ's decision by the Appeals Council, which request was denied on June 5, 2009, thereby making the decision of the ALJ the final decision of the Commissioner. (R. at 1 - 3).

Plaintiff filed his Complaint in this Court on August 10, 2009. (Docket No. 1). Defendant filed his Answer on March 23, 2010. (Doc. No. 10). Cross-motions for Summary Judgment followed. (Doc. Nos. 13, 17).

## III.     STATEMENT OF THE CASE

In her decision, the ALJ made the following findings:

1.  The [Plaintiff] meets the insured status requirements of the Social Security Act through December 31, 2009;
2.  The [Plaintiff] has not engaged in substantial gainful activity since June 29, 2003, the alleged onset date;
3.  The [Plaintiff] has the following severe impairments: coronary artery disease, fatigue, thyroiditis and degenerative arthrosis of the neck;
4.  The [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1;
5.  After careful consideration of the entire record, the undersigned finds that the

---

[1]

Citations to Doc. Nos. 11 - 11-9, the Record, *hereinafter*, "R. at __."

[Plaintiff] has the residual functional capacity to perform medium work as defined in 20 C.F.R. 404.1567(c) except that the individual is limited to frequently lifting 25 pounds and on occasion 50 pounds, and should avoid exposure to temperature extremes, exposure to heights, and exposure to humidity;

6.  The [Plaintiff] is capable of performing past relevant work as an engineer. This work does not require the performance of work-related activities precluded by the [Plaintiff's] residual functional capacity;

7.  The [Plaintiff] was born on July 1, 1944 and was 58 years old, which is defined as an individual of advanced age, on the alleged disability onset date. He is now an individual closely approaching retirement age;

8.  The [Plaintiff] has at least a high school education and is able to communicate in English;

9.  Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the [Plaintiff] is "not disabled," whether or not the [Plaintiff] has transferable job skills;

10. Considering the [Plaintiff's] age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the [Plaintiff] can perform; and

11. The [Plaintiff] has not been under a disability, as defined in the Social Security Act, from June 29, 2003 through the date of this decision.

(R. at 18-22).  Plaintiff's objections to the ALJ's benefits determination rest upon his assertion that the ALJ failed to support his decision with substantial evidence, in that she improperly rejected Plaintiff's subjective complaints of fatigue and neck pain. (Doc. No. 18 at 9 - 10).

## IV. STANDARD OF REVIEW

Judicial review of the Commissioner's final decisions on disability claims is provided by statute. 42 U.S.C. §§ 405(g)[2] and 1383(c)(3).[3] Section 405(g) permits a district court to review transcripts and records upon which a determination of the Commissioner is based. Because the standards for eligibility under Title II (42 U.S.C. §§ 401-433, regarding DIB), and judicial review thereof, are virtually identical to the standards under Title XVI (42 U.S.C. §§ 1381-1383f, regarding SSI), regulations and decisions rendered under the Title II disability standard, 42 U.S.C. § 423, are pertinent and applicable in Title XVI decisions rendered under 42 U.S.C. § 1381(a). *Sullivan v. Zebley*, 493 U.S. 521, 525 n. 3(1990); *Burns v. Barnhart*, 312 F.3d 113, 119 n. 1 (3d Cir. 2002).

### A. Substantial Evidence

If supported by substantial evidence, the Commissioner's factual findings must be accepted as conclusive. *Ventura v. Shalala*, 55 F.3d 900, 901 (3d Cir. 1995); *Wallace v. Secretary of HHS*, 722 F.2d 1150, 1152 (3d Cir. 1983). The district court's function is to determine whether the record,

---

[2]

Section 405(g) provides in pertinent part:

> Any individual, after any final decision of the [Commissioner] made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action . . . brought in the district court of the United States for the judicial district in which the plaintiff resides, or has his principal place of business. . .

42 U.S.C. § 405(g).

[3]

Section 1383(c)(3) provides in pertinent part:

> The final determination of the Commissioner of Social Security after a hearing under paragraph (1) shall be subject to judicial review as provided in section 405(g) of this title to the same extent as the Commissioner's final determinations under section 405 of this title.

42 U.S.C. § 1383(c)(3).

*as a whole*, contains substantial evidence to support the Commissioner's findings. *See Adorno v. Shalala*, 40 F.3d 43, 46 (3d Cir.1994) (*citing Richardson v. Perales*, 402 U.S. 389, 401 (1971). The Supreme Court has explained that "substantial evidence" means "more than a mere scintilla" of evidence, and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson,* 402 U.S. at 401 (citation omitted). *See Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005); *Ventura*, 55 F.3d at 901 (*quoting Richardson*); *Stunkard v. Secretary of HHS*, 841 F.2d 57, 59 (3d Cir. 1988).

The United States Court of Appeals for the Third Circuit has referred to this standard as "less than a preponderance of the evidence but more than a mere scintilla."*Burns v. Barnhart*, 312 F.3d 113, 118 (3d Cir. 2002), *quoting Jesurum v. Secretary of the Dep't of Health and Human Servs.*, 48 F.3d 114, 117 (3d Cir. 1995). "A single piece of evidence will not satisfy the substantiality test if the Secretary ignores, or fails to resolve, a conflict created by countervailing evidence." *Mason v. Shalala,* 994 F.2d 1058, 1064 (3d Cir. 1993), *quoting Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983). The substantial evidence standard allows a court to review a decision of an ALJ, yet avoid interference with the administrative responsibilities of the Commissioner. *See Stewart v. Secretary of HEW*, 714 F.2d 287, 290 (3d Cir.1983).

In reviewing the record for substantial evidence, the district court does not weigh the evidence or substitute its own conclusions for those of the fact finder. *Rutherford*, 399 F.3d at 552. In making this determination, the district court considers and reviews only those findings upon which the ALJ based his or her decision, and cannot rectify errors, omissions or gaps in the medical record by supplying additional findings from its own independent analysis of portions of the record which were not mentioned or discussed by the ALJ. *Fargnoli v. Massarini,* 247 F.3d 34, 44 n.7 (3d Cir.

2001) ("The District Court, apparently recognizing the ALJ's failure to consider all of the relevant and probative evidence, attempted to rectify this error by relying on medical records found in its own independent analysis, and which were not mentioned by the ALJ. This runs counter to the teaching of *SEC v. Chenery Corp.*, 318 U.S. 80 (1943), that '[t]he grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based.' *Id.* at 87"; parallel and other citations omitted).

### B. Five Step Determination Process

To qualify for DIB under Title II of the Act, a claimant must demonstrate that there is some "medically determinable basis for an impairment that prevents him or her from engaging in any substantial gainful activity for a statutory twelve-month period." *Kangas v. Bowen*, 823 F.2d 775, 777 (3d Cir. 1987); 42 U.S.C. § 423 (d)(1) (1982). Similarly, to qualify for SSI, the claimant must show "he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1383c(a)(3)(A).

When resolving the issue of whether a claimant is disabled and whether the claimant is entitled to either DIB or SSI benefits, the Commissioner utilizes the familiar five-step sequential evaluation process. 20 C.F.R. §§ 404.1520 and 416.920 (1995). *See Sullivan*, 493 U.S. at 525. The Court of Appeals for the Third Circuit summarized this five step process in *Plummer v. Apfel*, 186 F.3d 422 (3d Cir.1999):

> In *step one*, the Commissioner must determine whether the claimant is currently engaging in substantial gainful activity. 20 C .F.R. § 404.1520(a). If a claimant is found to be engaged in substantial activity, the disability claim will be

denied. . . . In *step two*, the Commissioner must determine whether the claimant is suffering from a severe impairment. 20 C.F.R. § 404.1520(c). If the claimant fails to show that her impairments are "severe", she is ineligible for disability benefits.

In *step three*, the Commissioner compares the medical evidence of the claimant's impairment to a list of impairments presumed severe enough to preclude any gainful work. 20 C.F.R. § 404.1520(d). If a claimant does not suffer from a listed impairment or its equivalent, the analysis proceeds to steps four and five. *Step four* requires the ALJ to consider whether the claimant retains the residual functional capacity to perform her past relevant work. 20 C.F.R. § 404.1520(d). The claimant bears the burden of demonstrating an inability to return to her past relevant work. . . .

If the claimant is unable to resume her former occupation, the evaluation moves to the final *step* [*five*]. At this stage, the burden of production shifts to the Commissioner, who must demonstrate the claimant is capable of performing other available work in order to deny a claim of disability. 20 C.F.R. § 404.1520(f). The ALJ must show there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with her medical impairments, age, education, past work experience, and residual functional capacity. The ALJ *must analyze the cumulative effect of all the claimant's impairments* in determining whether she is capable of performing work and is not disabled. The ALJ will often seek the assistance of a vocational expert at this fifth step. . . .

*Plummer*, 186 F.3d at 428 (italics supplied; certain citations omitted). *See also Rutherford*, 399 F.3d at 551 ("In the first four steps the burden is on the claimant to show that she (1) is not currently engaged in gainful employment because she (2) is suffering from a severe impairment (3) that is listed in an appendix (or is equivalent to such a listed condition) or (4) that leaves her lacking the RFC to return to her previous employment (Reg. §§ 920(a) to (e)). If the claimant satisfies step 3, she is considered per se disabled. If the claimant instead satisfies step 4, the burden then shifts to the Commissioner at step 5 to show that other jobs exist in significant numbers in the national economy that the claimant could perform (Reg. § 920(f)).").

Thus, a claimant may demonstrate that his or her impairment is of sufficient severity to

qualify for benefits in one of two ways:

(1)  by introducing medical evidence that the claimant is disabled *per se* because he or she meets the criteria for one or more of a number of serious Listed Impairments delineated in 20 C.F.R. Regulations No. 4, Subpt. P, Appendix 1, or that the impairment is *equivalent* to a Listed Impairment.  *See Heckler v. Campbell*, 461 U.S. 458, 460 (1983);  *Stunkard*, 841 F.2d at 59; *Kangas*, 823 F.2d at 777 (Steps 1-3); or,

(2) in the event that the claimant suffers from a less severe impairment, he or she will be deemed disabled where he or she is nevertheless unable to engage in "any other kind of substantial gainful work which exists in the national economy . . . ."  *Campbell*, 461 U.S. at 461 (*citing* 42 U.S.C. § 423 (d)(2)(A)). In order to prove disability under this second method, the plaintiff must first demonstrate the existence of a medically determinable disability that precludes him or her from returning to his or her former job (Steps 1-2, 4).  *Stunkard,* 841 F.2d at 59;  *Kangas*, 823 F.2d at 777. Once it is shown that he or she is unable to resume his or her previous employment, the burden shifts to the Commissioner (Step 5) to prove that, given the plaintiff's mental or physical limitations, age, education and work experience, he or she is able to perform substantial gainful activity in jobs available in the national economy.  *Campbell*, 461 U.S. at 461; *Boone v. Barnhart*, 353 F.3d 203, 205 (3d Cir. 2003); *Stunkard*, 842 F.2d at 59;  *Kangas*, 823 F.2d at 777.

### C. Vocational Expert - Hypothetical Questions

The determination of whether a claimant retains the Residual Functional Capacity ("RFC") to perform jobs existing in the workforce at step 5 is frequently based in large measure on testimony provided by the vocational expert ("VE").  *Rutherford*, 399 F.3d at 553, citing *Podedworny v. Harris*, 745 F.2d 210, 218 (3d Cir. 1984) (citations omitted).  Where a hypothetical question to the

VE accurately sets forth all of a claimant's significant impairments and restrictions in activities, physical and mental, as found by the ALJ or as uncontradicted on the medical record, the expert's response as to the existence of jobs in the national economy which the claimant is capable of performing may be considered substantial evidence in support of the ALJ's findings as to the claimant's RFC. *See, e.g., Burns v. Barnhart*, 312 F.3d 113, 123 (3d Cir. 2002), *citing Podedworny*, 745 F.2d at 218 *and Chrupcala v. Heckler*, 829 F.2d 1269, 1276 (3d Cir. 1987) (leading cases on the use of hypothetical questions to VEs).[4] *See also Plummer*, 186 F.3d at 428 (factors to be considered in formulating hypothetical questions include medical impairments, age, education, work experience and RFC); *Boone*, 353 F.3d at 205-06 ("At the fifth step of the evaluation process, 'the ALJ often seeks advisory testimony from a vocational expert.'"). Objections to the adequacy of an ALJ's hypothetical questions to a vocational expert "often boil down to attacks on the RFC assessment itself." *Rutherford*, 399 F.3d at 554 n.8.

Additionally, the ALJ will often consult the Dictionary of Occupational Titles ("DOT"), a publication of the United States Department of Labor that contains descriptions of the requirements for thousands of jobs that exist in the national economy, in order to determine whether any jobs exist that a claimant can perform. *Burns*, 312 F.3d at 119; *see also id.* at 126 (The "Social Security Administration has taken administrative notice of the reliability of the job information contained in the [DOT].") (citing 20 C.F.R. § 416.966(d) (2002)). While an unexplained conflict between a VE's testimony and the relevant DOT job descriptions does not *necessarily* require reversal or remand of

---

4

Conversely, because the hypothetical question posed to a vocational expert "must reflect all of a claimant's impairments," *Chrupcala*, 829 F.2d at 1276, where there exists on the record "medically undisputed evidence of specific impairments not included in a hypothetical question to a vocational expert, the expert's response is not considered substantial evidence." *Podedworny*, 745 F.2d at 218.

an ALJ's determination, the United States Court of Appeals for the Third Circuit requires the ALJ to address and resolve any material inconsistencies or conflicts between the DOT descriptions and the VE's testimony, and failure to do so will necessitate a remand. *Boone*, 353 F.3d at 206.

### D. Multiple Impairments

Where a claimant has multiple impairments which, individually, may not reach the level of severity necessary to qualify as a Listed Impairment, the ALJ/ Commissioner nevertheless must consider all of the claimant's impairments in combination to determine whether, collectively, they meet or equal the severity of a Listed Impairment. *Burnett*, 220 F.3d at 122 ("the ALJ must consider the combined effect of multiple impairments, regardless of their severity"); *Bailey v. Sullivan*, 885 F.2d 52, 60 (3d Cir. 1989) ("in determining an individual's eligibility for benefits, the 'Secretary shall consider the combined effect of all of the individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity,'"), *citing* 42 U.S.C. § 423(d)(2)(c), and 20 C.F.R. § § 404.1523, 416.923).

Section 404.1523 of the regulations, 20 C.F.R. § 404.1523, Multiple impairments, provides:

> In determining whether your physical or mental impairment or impairments are of a sufficient medical severity that such impairment or impairments could be the basis of eligibility under the law, we will consider the combined effect of all of your impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity. If we do find a medically severe combination of impairments, the combined impact of the impairments will be considered throughout the disability determination process. If we do not find that you have a medically severe combination of impairments, we will determine that you are not disabled (see § 404.1520).

Even if a claimant's impairment does not meet the criteria specified in the listings, he or she must be found disabled if his or her condition is *equivalent* to a listed impairment. 20 C.F.R. § 404.1520(d). When a claimant presents more than one impairment, "the combined effect of the

impairment must be considered before the Secretary denies the payment of disability benefits." *Bittel v. Richardson*, 441 F.2d 1193, 1195 (3d Cir.1971) . . . ."). To that end, the ALJ may not just make conclusory statements that the impairments do not equal a listed impairment in combination or alone, but must set forth the reasons for his or her decision, and *specifically* explain why he or she found that the claimant's impairments did not, alone or in combination, equal in severity one of the listed impairments. *Fargnoli*, 247 F.3d at 40 n. 4, *citing Burnett*, 220 F.3d at 119-20.

If the ALJ or Commissioner believes that the medical evidence is inconclusive or unclear as to whether the claimant is unable to return to his or her past employment or perform other substantial gainful activities, it is incumbent upon the ALJ to "secure whatever evidence [he/she] believed was needed to make a sound determination." *Ferguson v. Schweiker*, 765 F.2d 31, 36 (3d Cir. 1985).

### E. Claimant's Subjective Complaints of Impairments and Pain

An ALJ must do more than simply state factual conclusions. Instead, he or she must make specific findings of fact to support his or her ultimate findings. *Stewart*, 714 F.2d at 290. The ALJ must consider all medical evidence in the record and provide adequate explanations for disregarding or rejecting evidence, especially when testimony of the claimant's treating physician is rejected. *See Weir on Behalf of Weir v. Heckler*, 734 F.2d 955, 961 (3d Cir.1984); *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir.1981). He or she must also give serious consideration to the claimant's subjective complaints, even when those assertions are not fully confirmed by objective medical evidence. *See Mason*, 994 F.2d at 1067-68; *Welch v. Heckler*, 808 F.2d 264, 270 (3d Cir.1986).

Pain alone, if sufficiently severe, may be a disabling impairment that prevents a claimant from performing any substantial gainful work. *E.g., Carter v. Railroad Retirement Board*, 834 F.2d 62, 65, *relying on Green v. Schweiker*, 749 F.2d 1066, 1068 (3d Cir. 1984); *Smith v. Cellophane*, 637

F.2d 968, 972 (3d Cir. 1981); *Dobrowolsky v. Cellophane*, 606 F.2d 403, 409 (3d Cir. 1979).

Similarly, an ALJ must give great weight to a claimant's subjective description of his or her inability

to perform even light or sedentary work when this testimony is supported by competent evidence.

*Schaudeck v. Commissioner of Social Security*, 181 F.3d 429, 433 (3d Cir. 1999), *relying on*

*Dobrowolsky*, 606 F.2d at 433. Where a medical impairment that could reasonably cause the alleged

symptoms exists, the ALJ must evaluate the intensity and persistence of the pain or symptom, and

the extent to which it affects the individual's ability to work. This obviously requires the ALJ to

determine the extent to which a claimant is accurately stating the degree of pain or the extent to

which he or she is disabled by it. *See* 20 C.F.R. § 404.1529(c). *Hartranft v. Apfel*, 181 F.3d 358,

362 (3d Cir. 1999).

If an ALJ concludes that the claimant's testimony is not credible, the specific basis for such

a conclusion must be indicated in his or her decision. *See Cotter*, 642 F.2d at 705. Our Court of

Appeals has stated: "in all cases in which pain or other symptoms are alleged, the determination or

decision rationale must contain a thorough discussion and analysis of the objective medical and the

other evidence, including the individual's complaints of pain or other symptoms and the adjudicator's

personal observations. The rationale must include a resolution of any inconsistencies in the evidence

as a whole and set forth a logical explanation of the individual's ability to work." *Schaudeck*, 181

F.3d at 433.

Subjective complaints of pain need not be "fully confirmed" by objective medical evidence

in order to be afforded significant weight. *Smith*, 637 F.2d at 972; *Bittel*, 441 F.2d at 1195. That is,

while "there must be objective medical evidence of some condition that could reasonably produce

pain, *there need not be objective evidence of the pain itself.*" *Green*, 749 F.2d at 1070-71 (emphasis

added), *quoted in Mason,* 994 F.2d at 1067. Where a claimant's testimony as to pain is reasonably supported by medical evidence, neither the Commissioner nor the ALJ may discount the claimant's pain *without contrary medical evidence. Ferguson*, 765 F.2d at 37; *Chrupcala*, 829 F.2d at 1275-76; *Akers v. Callahan,* 997 F.Supp. 648, 658 (W.D.Pa. 1998). "Once a claimant has submitted sufficient evidence to support his or her claim of disability, the Appeals Council may not base its decision upon mere disbelief of the claimant's evidence. Instead, the Secretary must present *evidence to refute the claim. See Smith v. Cellophane*, 637 F.2d 968, 972 (3d Cir.1981) (where claimant's testimony is reasonably supported by medical evidence, the finder of fact may not discount the testimony without contrary medical evidence)." *Williams v. Sullivan,* 970 F.3d 1178, 1184-85 (3d Cir. 1992) (emphasis added), *cert. denied* 507 U.S. 924 (1993).

In making his or her determination, the ALJ must consider and weigh all of the evidence, both medical and non-medical, that supports a claimant's subjective testimony about symptoms and the ability to work and perform activities, and must specifically explain his or her reasons for rejecting such supporting evidence. *Burnett v. Commissioner of Social Security*, 220 F.3d 112, 119-20 (3d Cir. 2000). Moreover, an ALJ may not substitute his or her evaluation of medical records and documents for that of a treating physician; "an ALJ is not free to set his own expertise against that of a physician who presents competent evidence" by independently "reviewing and interpreting the laboratory reports . . . ." *Ferguson*, 765 F.2d at 37.

### F. Medical Opinions of Treating Sources

"A cardinal principle guiding disability eligibility determinations is that the ALJ accord treating physicians' reports great weight, especially 'when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time.'

*Plummer*, 186 F.3d at 429 (*quoting Rocco v. Heckler*, 826 F.2d 1348, 1350 (3d Cir.1987)) . . . .”

*Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000) (additional citations omitted). The ALJ must

weigh conflicting medical evidence and can chose whom to credit, but “cannot reject evidence for

no reason or for the wrong reason.” *Id.* at 317, *quoting Plummer*, 186 F.3d at 429 (additional

citations omitted). The ALJ must consider all medical findings that support a treating physician’s

assessment that a claimant is disabled, and can only reject a treating physician’s opinion on the basis

of contradictory medical evidence, not on the ALJ’s own credibility judgments, speculation or lay

opinion. *Morales*, 225 F.3d at 317-318 (citations omitted).

> Moreover, the Commissioner/ALJ :

>> must "explicitly" weigh all relevant, probative and available evidence. . . . [and] must provide some explanation for a rejection of probative evidence which would suggest a contrary disposition. . . . The [Commissioner] may properly accept some parts of the medical evidence and reject other parts, but she must *consider* all the evidence and *give some reason for discounting* the evidence she rejects.

*Adorno*, 40 F.3d at 48 (emphasis added; citations omitted). *See also Fargnoli,* 247 F.3d at 42-43

(although an ALJ may weigh conflicting medical and other evidence, he or she must give some

indication of the evidence that he or she rejects and explain the reasons for discounting the evidence;

where an ALJ failed to mention significant contradictory evidence or findings, the Court was left to

wonder whether he considered and rejected them, or failed to consider them at all, giving the Court

“little choice but to remand for a comprehensive analysis of the evidence consistent with the

requirements of the applicable regulations and the law of this circuit. . . .”); *Burnett*, 220 F.3d at 121

(“In making a residual functional capacity determination, the ALJ must consider all evidence before

him. . . . Although the ALJ may weigh the credibility of the evidence, he must give some indication

of the evidence which he rejects and his reason(s) for discounting such evidence. . . . ‘In the absence

of such an indication, the reviewing court cannot tell if significant probative evidence was not credited or simply ignored.' *Cotter*, 642 F.2d at 705.") (additional citations omitted).

## G. Medical Source Opinion of "Disability"

A medical statement or opinion expressed by a treating source on a matter reserved for the Commissioner, such as a statement that the claimant is "disabled" or "unable to work," is not dispositive or controlling. *Adorno*, 40 F.3d at 47-48, *citing Wright v. Sulllivan*, 900 F.2d 675, 683 (3d Cir. 1990) ("this type of [medical] conclusion  cannot be controlling). 20 C.F.R. § 404.1527 (1989) indicates that [a] statement by your physician that you are disabled or unable to work does not mean that we will determine that you are disabled. We have to review the medical findings and other evidence that support a physician's statement that you are disabled.") (internal citations omitted).

The rules and regulations of the Commissioner and the SSA make a distinction between (I) medical opinions about the nature and severity of a claimant's impairments, including symptoms, diagnosis and prognosis, what the claimant can still do despite impairments, and physical or mental restrictions, on the one hand, and (ii) medical opinions on matters reserved for the Commissioner, such as an opinion that a claimant is "disabled" or "unable to work," on the other. The latter type of medical opinions are on matters which require dispositive administrative findings that would direct a determination of disability. *Compare* 20 C.F.R. §404.1527(a-d) (2002) (consideration and weighing of medical opinions) *with* 20 C.F.R. §404.1527(e) (2002) (distinguishing medical opinions on matters reserved for the Commissioner).   The regulations state that the SSA will "always consider medical opinions in your case record," and states the circumstances in which an opinion

of a treating source is entitled to "controlling weight." 20 C.F.R. §404.1527(b), (d) (2002).[5] Medical

opinions on matters reserved for the Commissioner are not entitled to "any special significance,"

although they must always be considered. 20 C.F.R. §404.1527(e)(1-2) (2002). The Commissioner's

Social Security Ruling ("SSR") 96-2p, "Policy Interpretation Ruling, Titles II and XVI: Giving

Controlling Weight to Treating Source Medical Opinions," and SSR 96-5p, "Policy Interpretation

Ruling, Titles II and XVI: Medical Source Opinions on Issues Reserved to the Commissioner,"

explain in some detail the distinction between medical opinions entitled to controlling weight and

those reserved to the Commissioner.

SSR 96-2p explains that a "finding that a treating source's medical opinion is not entitled to

controlling weight does not mean that the opinion is rejected. It may still be entitled to deference and

be adopted by the adjudicator." SSR 96-2p, Purpose No. 7. Where a medical opinion is not entitled

---

5

Subsection (d) states: "How we weigh medical opinions. Regardless of its source, we will evaluate every medical opinion we receive. Unless we give a treating source's opinion controlling weight under paragraph (d)(2) of this section, we consider [a list of] factors in deciding the weight we give to any medical opinion." 20 C.F.R. 404.1527(d) (2002). Subsection (d)(2) describes the "treatment relationship," and states:

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations. If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, *we will give it controlling weight*. When we do not give the treating source's opinion controlling weight, we apply the factors listed in paragraphs (d)(2)(i) and (d)(2)(ii) of this section, as well as the factors in paragraphs (d)(3) through (d)(6) of this section in determining the weight to give the opinion. *We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion*.

20 C.F.R. § 404.1527(d)(2) (2002) (emphasis added).

to controlling weight or special significance because it is on an issue reserved for the Commissioner,[6] these Social Security Rulings provide that, because an adjudicator is required to evaluate *all* evidence in the record that may bear on the determination or decision of disability, "adjudicators must *always* carefully consider medical source opinions about any issue, including opinions about those issues that are reserved to the Commissioner," and that such opinions "must *never* be ignored. . . ." SSR 96-5p, Policy Interpretation, (emphasis added). Moreover, because the treating source's opinion and other evidence is "important, if the evidence does not support a treating source's opinion on any issue reserved to the Commissioner and the adjudicator cannot ascertain the basis of the opinion from the case record, the adjudicator must make 'every reasonable effort' to recontact the source for clarification of the reasons for the opinion." *Id.*

A medical opinion is not entitled to controlling weight where it is not "well-supported by medically acceptable clinical and laboratory diagnostic techniques" or is "inconsistent with the other substantial evidence in [the] case record . . ." 20 C.F.R. § 404.1527 (d)(2). *See* note 4, *supra*. Where an opinion by a medical source is not entitled to controlling weight, the following factors are to be considered: the examining relationship, the treatment relationship (its length, frequency of examination, and its nature and extent), supportability by clinical and laboratory signs, consistency, specialization and other miscellaneous factors. 20 C.F.R. § 404.1527 (d)(1-6).

### H. State Agency Medical and Psychological Consultants

Medical and psychological consultants of a state agency who evaluate a claimant based upon a review of the medical record "are highly qualified physicians and psychologists who are also

---

[6]
       SSR 96-5p lists several examples of such issues, including whether an individual's impairment(s) meets or equals in severity a Listed Impairment, what an individual's RFC is and whether that RFC prevents him or her from returning to his or her past relevant work, and whether an individual is "disabled" under the Act.

experts in Social Security disability evaluation. Therefore, administrative law judges must consider findings of State agency medical and psychological consultants or other program physicians or psychologists as opinion evidence, except for the ultimate determination about whether [a claimant is] disabled." 20 C.F.R. § 404.1527 (f)(2)(I). See also SSR 96-6p: Titles II and XVI: Consideration of Administrative Findings of Fact by State Agency Medical and Psychological Consultants ("1. Findings of fact made by State agency medical and psychological consultants and other program physicians and psychologists regarding the nature and severity of an individual's impairment(s) must be treated as expert opinion evidence of nonexamining sources at the administrative law judge and Appeals Council levels of administrative review. 2. Administrative law judges and the Appeals Council may not ignore these opinions and must explain the weight given to these opinions in their decisions.").

## V.    DISCUSSION

Plaintiff sought DIB as a result of limitations stemming from coronary artery disease, thyroiditis, and degenerative arthritis of the cervical spine. (Doc. No. 18 at 8). Specifically, Plaintiff claims he is prevented from maintaining employment due to fatigue and neck pain. (*Id.*). Following the June 12, 2008 hearing, the ALJ concluded that Plaintiff's impairments were not of sufficient severity to preclude him from returning to his past work as a civil engineer. (R. at 18-23). Moreover, based upon the record and the testimony of the vocational expert, the ALJ concluded that even if Plaintiff were precluded from returning to his former work, there were a significant number of jobs in the national economy which Plaintiff could hold. (*Id.*). Plaintiff was, therefore, ineligible for DIB. (*Id.*).

In his Motion for Summary Judgment, Plaintiff disputes the ALJ's findings, arguing that the

ALJ's RFC assessment, and the hypothetical question based upon that assessment, were improper because the ALJ failed to consider his subjective claims of fatigue and neck pain, and failed to provide any justification for doing so. (Doc. No. 18 at 9 - 10). Had the Plaintiff's claims been properly considered, Plaintiff contends that he would be entitled to DIB. (*Id.*).

Defendant argues in his Motion for Summary Judgment that substantial evidence supports the ALJ's determination and that simply being diagnosed with a medical condition is not adequate to establish entitlement to DIB. (Doc. No. 14 at 9). Specifically, Defendant asserts that the severity of Plaintiff's allegations of fatigue and neck pain were not supported by any medical evidence on record, and therefore, were not sufficient to preclude Plaintiff from maintaining employment. (*Id.* at 9 - 10).

## A. Ability to Return to Past Relevant Work

Step four of the familiar five step disability assessment for DIB requires the ALJ to consider whether a claimant had the RFC to perform her past relevant work. *Plummer*, 186 F.3d at 428; 20 C.F.R. § 404.1520(d). At this step, a claimant bears the burden of showing an inability to return to his or her past relevant work. *Id.* The ALJ determined that Plaintiff did not show that he was so limited. (R. at 21). Plaintiff argues that in light of his testimony regarding the severity of his symptoms of fatigue and neck pain, the support for these claims in the record, and the ALJ's failure to address the claims, the Plaintiff should not have been found capable of returning to his past relevant work. (Doc. No. 18 at 9 - 10). Defendant argues that the ALJ provided substantial evidence to support his determination, because he recognized and discussed Plaintiff's subjective claims, and rejected said claims because the factual record did not support Plaintiff's claim that his fatigue and neck pain were so severe as to prevent him from performing his past relevant work. (Doc. No. 14

at 12 - 13).

## 1. Plaintiff's Subjective Complaints of Chronic Fatigue

Plaintiff was formerly employed by the Pennsylvania Department of Transportation ("PennDOT") for over 35 years as a civil engineer. (R. at 65). Plaintiff retired from PennDOT in 2003. (R. at 50). This was his last full-time job. (*Id.*). Plaintiff testified that he could no longer work at PennDOT because of chronic fatigue that required him to take frequent breaks during work. (R. at 47). While at PennDOT, during his lunch hour and two coffee breaks a day, Plaintiff testified that he would have to rest in order to continue working. (R. at 64 - 66). Plaintiff testified that his fatigue started with - and was likely the result of - heart problems and subsequent open heart surgery in 1998. (R. at 46 - 47). At the hearing, Plaintiff claimed that he remained at PennDOT until 2003 only to collect a pension. (R. at 50 - 51). He also testified that one of his doctors informed him that his fatigue was partly a side effect of Lyposan - a medication prescribed for a genetic condition. (R. at 52 - 53).

The ALJ acknowledged Plaintiff's complaints of chronic fatigue in his decision, as well as Plaintiff's contention that his heart condition and medications were likely the cause. (R. at 19). The ALJ also acknowledged that Plaintiff's work and day-to-day activities were impaired due to the need to rest frequently - Plaintiff having claimed the need to lie down at least twice a day. (R. at 19). Plaintiff's need to avoid extreme temperatures, humidity, and heights was also recognized by the ALJ. (R. at 18 - 19). However, despite these limitations, the ALJ found that Plaintiff's subjective claim that the severity of his fatigue prevented him from returning to his past relevant work lacked support in the record. (R. at 20 - 21).

When assessing the severity of a claimant's subjective complaints of impairment, the ALJ

20

must give serious consideration to the complaints, regardless of whether these complaints are fully supported by objective evidence on the record. *Mason*, 994 F.2d at 1067-98. Complaints regarding the inability to do even sedentary work must be given significant weight, if supported. *Schaudeck*, 181 F.3d at 433. Where a subjective impairment could *reasonably* be caused by a medical condition, the ALJ must evaluate the intensity and persistence of the symptom, and the extent of its effects. *Hartranft*, 181 F.3d at 362 (emphasis added). To reject or discredit such complaints, the ALJ must provide contradictory evidence from the medical record, and must explain the reasons for rejection. *Williams*, 970 F.3d at 1184-85; *Burnett*, 220 F.3d at 119-20.

The ALJ's RFC assessment of Plaintiff, which was incorporated in the ALJ's hypothetical question to the vocational expert, stated that Plaintiff retained the capacity to perform medium work as defined in 20 C.F.R. § 404.1567(c), except that Plaintiff was limited to frequently lifting 25 pounds and on occasion 50 pounds, and should avoid exposure to temperature extremes, exposure to heights, and exposure to humidity. (R. at 18). This conclusion is supported by Plaintiff's medical records and Plaintiff's own statements regarding his daily activities.

The ALJ noted that after undergoing bypass surgery for his heart condition, regular follow up stress-testing by Plaintiff's cardiologist I.N. Pandit, M.D., as late as October 4, 2005, revealed that Plaintiff had excellent exercise tolerance and conditioning, and experienced no chest pain. (R. at 20). Plaintiff also exhibited no signs of ischemia during testing. (R. at 20). Plaintiff's rehabilitation records from St Clair Hospital showed that he had good ejection function in his heart, and was able to utilize exercise equipment such as the treadmill, air-dyne bike, elliptical trainer, arm ergometer, stairmaster, and freeweights. (R. at 20). The Plaintiff reported being satisfied with his rehabilitation program. (R. at 20).

The ALJ also reviewed Plaintiff's consultative examination with Roy M. Beerel, M.D., on August 30, 2006, during which Plaintiff reported suffering from thyroiditis 15 years ago, though the condition had since been resolved. (R. at 20). Dr. Beerel reported that a recent TSH test for thyroiditis confirmed that Plaintiff was without symptoms of the condition. (R. at 20). Dr. Beerel noted that Plaintiff denied having chest pain, dyspnea, lightheadedness, and nausea at the exam. (R. at 20). Dr. Beerel found that Plaintiff looked very healthy and was in no acute distress. (R. at 20). Dr. Beerel observed Plaintiff ambulated independently and fairly swiftly, without expressions of pain, discomfort, or tiredness. (R. at 20). At the examination, Plaintiff's heart was without murmurs or gallops. (R. at 20). The ALJ mentioned Dr. Beerel's opinion that Plaintiff's fatigue may have been caused by his strict low-fat diet. (R. at 20).

As of June 29, 2006, the Plaintiff reported being fatigued, but used no assistive devices to walk. (R. at 19 - 20). Plaintiff performed yoga exercises, and walked from one to five miles several times a week. (R. at 19 - 20). Plaintiff also stated that he did the yard work at his home and mowed his lawn with a self propelled mower, though he took breaks. (R. at 19). The ALJ also discussed the findings of a State Agency consultant who performed an examination of Plaintiff on October 26, 2006, and subsequently determined that Plaintiff was not limited from working by his fatigue. (R. at 21, 246).

Ultimately, the ALJ found that Plaintiff's heart disease could reasonably cause fatigue symptoms, but that in light of the above medical and other evidence, there was no evidence to support Plaintiff's claim that his fatigue was so severe as to prevent him from working. (R. at 21). Plaintiff provides no contradictory evidence on the record. (Doc. No. 18 at 7 - 10).

The Court of Appeals for the Third Circuit requires an ALJ to seriously consider a claimant's

subjective complaints and give them great weight, particularly where an existing medical condition could reasonably produce symptoms alleged by such complaints; however, where the ALJ explains that there is no objective medical evidence to support such claims, and particularly where the record contradicts the subjective claims, the ALJ may properly reject the claims. *Mason*, 994 F.2d at 1067-98; *Schaudeck*, 181 F.3d at 433; *Hartranft*, 181 F.3d at 362; *Williams*, 970 F.3d at 1184-85; *Burnett*, 220 F.3d at 119-20. Here, the ALJ specifically discussed the Plaintiff's alleged symptoms of severely limiting fatigue, contrasted them with the underlying medical record and with Plaintiff's own reports of regular activities, and found the fatigue did not impair Plaintiff's ability to work. The ALJ's determination was, therefore, properly supported by substantial evidence.

### 2. Plaintiff's Subjective Complaints of Neck Pain

At his hearing, Plaintiff testified that beginning in 2004 he began to experience severe neck pain. (R. at 47). Plaintiff testified that the pain had recently become unbearable, despite having had several months of physical therapy, and that he was in so much pain that he could not even look upwards. (R. at 47). Plaintiff explained that after seeing a doctor in 2004, he was told that he had arthritis. (R. at 48). Plaintiff testified that the doctor prescribed Celebrex for his pain, but Plaintiff did not take it because he feared it would have a negative effect on his heart condition. (R. at 48). At the time of the hearing, Plaintiff only took Tylenol for his pain. (R. at 48). According to Plaintiff, changes in the weather created extra pain. (R. at 49).

In her decision, the ALJ acknowledged Plaintiff's claim that he had arthritis in the neck, and had undergone physical therapy for unbearable pain. (R. at 19). The ALJ also acknowledged that Plaintiff had been prescribed Celebrex, but declined to take it because of worries about heart-related complications - taking over-the-counter Tylenol instead. (R. at 19). However, the ALJ found that

Plaintiff's subjective complaints that severe neck pain precluded employment were not credible due to a lack of support in the record. (R. at 20 - 21).

When analyzing capacity to work, an ALJ must accord complaints of pain significant weight, even when there is incomplete support in the medical record. *Smith*, 637 F.2d at 972. Moreover, there need be no objective evidence of pain, as long as there is objective evidence of a medical condition that could reasonably produce the pain suffered. *Green*, 749 F.2d at 1070-1071. An ALJ must provide contrary medical evidence to discredit a claim of pain reasonably supported by medical evidence. *Ferguson*, 765 F.2d at 37. As with other subjective complaints made by a claimant, an ALJ must consider and weigh all the evidence of record supporting the claim, and must specifically address the basis for rejecting the claim. *Burnett*, 220 F.3d at 119-20.

The ALJ's RFC assessment of Plaintiff was that Plaintiff had the capacity to perform medium work as defined in 20 C.F.R. § 404.1567(c), except that he was limited to frequently lifting 25 pounds and on occasion 50 pounds, and should avoid exposure to temperature extremes, exposure to heights, and exposure to humidity. (R. at 18). The ALJ based this determination, in part, upon Plaintiff's physical therapy records. Plaintiff began physical therapy for a cervical strain in 2004; Plaintiff claimed that he suffered from constant soreness and intermittent pain on the right paraspinal region and right trapezius region, but with no obvious cause. (R. at 19). However, the ALJ noted that on June 14, 2004, Plaintiff reported his symptoms had improved and he was able to perform his home exercise routine without increased symptoms. (R. at 19). By July 8, 2004, Plaintiff had completed 12 therapy sessions and rated his pain as 2 on a scale of 10. (R. at 19).

The ALJ also noted that Plaintiff had been examined by Eric Nabors, M.D., for his neck pain and that Hofmann's, Lhermitte, and Spurling tests had negative results for neck disorders. (R. at 19).

Dr. Nabors found that Plaintiff had no localized tenderness, and a normal cervical lordosis without deformity. (R. at 19). Plaintiff's neck muscle strength was 5 on a scale of 5. (R. at 20). Dr. Nabors diagnosed Plaintiff with mild degenerative arthrosis and cervical strain without evidence of radiculopathy, but, after a July 9, 2004 consultation with Plaintiff, Dr. Nabors determined that the conditions had been resolved. (R. at 20).

The ALJ also considered Dr. Beerel's August 30, 2006 consultative exam, wherein he noted that Plaintiff ambulated independently and fairly swiftly, without expressions of pain or discomfort, that he had full straight leg raising, ability to climb on and off the exam table quickly, and that he had a full range of motion in his neck with no expressions of pain. (R. at 20). The State Agency consultant made similar findings during his exam of Plaintiff on October 26, 2006, and further found that Plaintiff was capable of occasionally lifting and carrying 50 pounds and frequently lifting and carrying 25 pounds. (R. at 20).

Based on the foregoing, the ALJ concluded that Plaintiff's neck condition could reasonably cause pain, but did not support the disabling degree of severity Plaintiff claimed. (R. at 21). As a result, the ALJ determined that Plaintiff's neck pain was not so limiting as to preclude employment. (R. at 21). In his Motion for Summary Judgment, Plaintiff does not reference any specific evidence contradicting that which the ALJ used to support her conclusion. (Doc. No. 18 at 7 - 10).

When assessing subjective complaints of pain, the ALJ must accord the claims significant weight where a claimant's objective medical condition could reasonably create the symptoms complained of. *Smith*, 637 F.2d at 972. *Green*, 749 F.2d at 1070-1071. In order to refute a claimant's subjective complaints of pain, the ALJ must present and discuss medical evidence from the record which contradicts the claim. *Ferguson*, 765 F.2d at 37. *Burnett*, 220 F.3d at 119-20. The ALJ

specifically discussed the Plaintiff's alleged symptoms of severely limiting neck pain, contrasted them with the underlying medical record, and found the neck pain was not sufficiently severe as to impair Plaintiff's ability to work. (R. at 19 - 22). The ALJ's determination was, therefore, properly supported by substantial evidence.

### B. Ability to Engage in Other Available Work in the National Economy

In making her benefits determination, the ALJ made the alternative finding that even if Plaintiff could not return to past relevant employment, his limitations did not preclude him from other employment existing in significant numbers in the national economy. (R. at 21). Under the five step process of evaluating a DIB claim, if the claimant is unable to resume her former occupation, the evaluation moves to the step five. *Plummer*, 186 F.3d at 428. At this stage, the burden of production shifts to the ALJ, who must demonstrate the claimant is capable of performing other available work existing in significant numbers in the national economy. *Plummer*, 186 F.3d at 428; 20 C.F.R. § 404.1520(f). The determination is based upon the vocational expert's opinion as to whether the claimant can perform such jobs, consistent with his or her medical impairments, age, education, past work experience, and residual functional capacity. *Plummer*, 186 F.3d at 428.

Plaintiff again argues that in light of his testimony regarding the severity of his symptoms of fatigue and neck pain, the support for these claims in the record, and the ALJ's failure to address the claims, the Plaintiff should not have been found capable of maintaining employment. (Doc. No. 18 at 9 - 10). Defendant argues that the ALJ did discuss Plaintiff's subjective claims, and properly rejected said claims because the factual record did not support the Plaintiff's belief that his fatigue and neck pain were so severe as to prevent him from maintaining employment. (Doc. No. 14 at 12 - 13).

The ALJ's RFC assessment of Plaintiff was supported by the record and, therefore, was properly incorporated into the ALJ's hypothetical question to the vocational expert, who opined that other employment was available to a person with Plaintiff's limitations in significant numbers in the national economy. The ALJ's determination that the Plaintiff was capable of engaging in other employment is supported by substantial evidence. *Podedworny*, 745 F.2d at 218.

## VI.    CONCLUSION

Based upon the foregoing, this Court finds that the ALJ's determination that Plaintiff was both capable of returning to past relevant work and of engaging in other work existing in significant numbers in the national economy, was properly supported by substantial evidence.

Accordingly, Defendant's Motion for Summary Judgment will be GRANTED, Plaintiff's Motion for Summary Judgment will be DENIED, and the decision of the ALJ will be AFFIRMED. An appropriate order follows.

*s/ Arthur J. Schwab*
Arthur J. Schwab
United States District Judge

Dated: July 16, 2010
cc/ecf: All counsel of record.